

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

March 28, 1951

Hon. William S. Fly, Chairman
Committee on Congressional
    and Legislative Districts
House of Representatives
52nd Legislature
Austin, Texas

Opinion No. V-1160

Re: Constitutionality of electing
    two Congressmen at large
    in a single county, dividing
    one county into two geograph-
    ic congressional districts, or
    including part of a county in
    a different district from that
    embracing the balance of the
    county.

Dear Sir:

        Reference is made to your request which reads in part
as follows:

        "I have been requested by the House Commit-
tee on Congressional and Legislative Districts to
ask an opinion of you and of your department on sev-
eral matters. The Committee is concerned over
what rules it will be required to follow that have
been prescribed either by the United States Consti-
tution, the Texas Constitution, the Statutes of the
United States, or the Statutes of Texas. We would
also like to know if there exist any Congressional
precedents which might aid us in our consideration.

        "It has been suggested to the Committee that
we should give Harris County two Congressmen. If
the Committee should decide that Harris County is
entitled to two Congressmen, will it be necessary
that these Congressmen be elected at large, or will
it be necessary to divide the county geographically
and have a Congressman run from each geographic
district of the county?

272

"We would like to know if one part of a
county can be put into one Congressional Dis-
trict and the other portion of the county put into
another Congressional District.  There is a sim-
ilar question as to whether a county like Dallas
could have a Congressman and then a flotorial
Congressman in the adjoining counties."

The pertinent portion of Section 2 of Article I, United
States Constitution, provides:

"Representatives and direct Taxes shall
be apportioned among the several States which
may be included within this Union, according to
their respective Numbers, which shall be deter-
mined by adding to the whole Number of free
Persons, including those bound to Service for a
Term of Years, and excluding Indians not taxed,
three fifths of all other Persons.[1]  The actual
Enumeration shall be made within three Years
after the first Meeting of the Congress of the
United States, and within every subsequent Term
of ten Years, in such Manner as they shall by
Law direct.  The Number of Representatives
shall not exceed one for every thirty Thousand,
but each State shall have at Least one Represen-
tative; . . ."

Section 4 of Article I provides in part:

"The Times, Places and Manner of hold-
ing Elections for Senators and Representatives,
shall be prescribed in each State by the Legis-
lature thereof; but the Congress may at any time
by Law make or alter such Regulations, except
as to the Places of chusing Senators."

Section 2a of Title II, U.S.C., provides:

---

1/  The first sentence of this section was superseded by the
provision of Section 2 of the 14th Amendment which reads:  "Rep-
resentatives shall be apportioned among the several States ac-
cording to their respective numbers, counting the whole number
of persons in each State, excluding Indians not taxed."

Hon. William S. Fly, page 3   (V-1160)

"(a) On the first day, or within one week thereafter, of the first regular session of the Eighty-second Congress and of each fifth Congress thereafter, the President shall transmit to the Congress a statement showing the whole number of persons in each State, excluding Indians not taxed, as ascertained under the seventeenth and each subsequent decennial census of the population, and the number of Representatives to which each State would be entitled under an apportionment of the then existing number of Representatives by the method known as the method of equal proportions, no State to receive less than one Member.

"(b) Each State shall be entitled, in the Eighty-third Congress and in each Congress thereafter until the taking effect of a reapportionment under this section or subsequent statute, to the number of Representatives shown in the statement required by subsection (a) of this section, no State to receive less than one Member. It shall be the duty of the Clerk of the House of Representatives, within fifteen calendar days after the receipt of such statement, to send to the executive of each State a certificate of the number of Representatives to which such State is entitled under this section. In case of a vacancy in the office of Clerk, or of his absence or inability to discharge this duty, then such duty shall devolve upon the Sergeant at Arms of the House of Representatives; and in case of vacancies in the offices of both the Clerk and the Sergeant at Arms, or the absence or inability of both to act, such duty shall devolve upon the Doorkeeper of the House of Representatives.

"(c) Until a State is redistricted in the manner provided by the law thereof after any apportionment, the Representatives to which such State is entitled under such apportionment shall be elected in the following manner: (1) If there is no change in the number of Representatives, they shall be elected from the districts then prescribed by the law of such State, and if any of them are elected from the State at large they shall continue to be so elected; (2) if there is an increase in the number of Representatives, such additional Representative or Representatives shall be

elected from the State at large and the other Representatives from the districts then prescribed by the law of such State; (3) if there is a decrease in the number of Representatives but the number of districts in such State is equal to such decreased number of Representatives, they shall be elected from the districts then prescribed by the law of such State; (4) if there is a decrease in the number of Representatives but the number of districts in such State is less than such number of Representatives, the number of Representatives by which such number of districts is exceeded shall be elected from the State at large and the other Representatives from the districts then prescribed by the law of such State; or (5) if there is a decrease in the number of Representatives and the number of districts in such State exceeds such decreased number of Representatives, they shall be elected from the State at large."

Pursuant to the above statute, the President has transmitted a statement to Congress and the Clerk of the House of Representatives has certified to the Governor of Texas "That the State of Texas shall be entitled, in the Eighty-Third Congress and in each Congress thereafter until the taking effect of a re-apportionment under said Act, as amended, or subsequent Statute to Twenty-Two Representatives."

In Section 21 of 54 Am. Jur. 536, United States, it is stated:

"Representatives in Congress are to be apportioned among the several states on the basis of the population thereof as determined by each decennial census, but each state is to have at least one Representative. The Constitution, however, leaves matters relating to congressional districts to the disposition of the states. Congress at one time undertook to legislate upon the subject by providing that members of Congress should be elected from districts composed of contiguous territory containing as nearly as practicable an equal number of inhabitants, but this requirement has been omitted from later acts of Congress providing for the apportionment of Representatives. There is no necessity that congressional districts be com-

posed of contiguous and compact territories, or
that they contain as nearly as practicable an equal
number of inhabitants, where such requirement is
not embodied in an act of Congress providing for
the apportionment of Representatives; and it has
been held that a legislative division of the state in-
to congressional districts is not reviewable by the
court where there is no constitutional limitation
on the power of the legislature to make such ap-
portionment. The validity of apportionment of the
state into districts is, therefore, largely a matter
of local state constitutional requirements."[2]

There is no provision in the State Constitution
which relates to the method of apportioning representation in
Congress. Therefore, it is our opinion that it is left entirely
to the Texas Legislature to determine the methods of appor-
tionment.

However, we wish to call to your attention that there
is now pending in the United States Congress a bill numbered
H.R. 2648 amending Section 2a of Title II, U.S.C., which pro-
vides in part:

"(c) Each State entitled in the Eighty-third
Congress and each Congress thereafter to more
than one Representative under the apportionment
provided in subsection (a) of this section shall es-
tablish for each Representative a district com-
posed of contiguous and compact territory, and no
district so established shall vary more than 15
per centum of the number obtained by dividing the
total population of such State, as established in
the last decennial census, by the number of Rep-
resentatives apportioned under subsection (a) of
this section.

"(d) Any Representative elected from a dis-
trict which does not conform to the requirements
set forth in subsection (c) of this section shall be
denied his seat in the House of Representatives and
the Clerk of the House shall refuse his credentials."

2/ Wood v. Broom, 287 U.S. 1 (1932); Colegrove v. Green,
328 U.S. 549 (1946).

In the event this bill passes, the Texas Legislature will be governed by its provisions.

## SUMMARY

It is for the Texas Legislature to determine the method of apportionment of representatives in Congress. 54 Am. Jur. 526, United States, Sec. 21.

Yours very truly,

APPROVED:

PRICE DANIEL
Attorney General

J.C. Davis, Jr.
County Affairs Division

Jesse P. Luton, Jr.
Reviewing Assistant

By  *Bruce Allen*
    Bruce Allen
     Assistant

Charles D. Mathews
First Assistant

BA:mw:b